UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| MICHAEL MARLATT, et al., | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 09-10647-PBS |
| LUBRIZOL ADVANCED MATERIALS INC., | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.

February 14, 2011

SOROKIN, M.J.

On January 21, 2010, I recommended that the Court allow the Defendant's Motion for Summary Judgment. Docket # 22. The Plaintiffs objected and the Court stayed its ruling, awaiting the Supreme Judicial Court's decision in Papadopoulos v. Target, 457 Mass. 368 (2010). In Papadopoulos, the SJC abolished the distinction between natural and unnatural accumulations of snow and held that a property owner "owes a duty to all lawful visitors to use reasonable care to maintain its property in a reasonably safe condition in view of all the circumstances." Id. at 378. The Parties have filed supplemental memoranda addressing the Papadopulous decision and its relevance to this case.[1] In light of the change in law, I recommend

---

[1] The decision applies retroactively: "We see no reason to limit our holding today to prospective application." Id. at 385.

that the Court DENY the Defendant's Motion for Summary Judgment.

I. STATEMENT OF FACTS

The relevant facts remain unchanged and are restated here for the Court's convenience.

Throughout the night of January 13, 2009, and into the following morning, temperatures were below freezing in Wilmington, Massachusetts, where Defendant Lubrizol maintains a plant. Docket # 18 at 4; Docket # 18-3 at 5.[2] Snow began falling early in the morning, accumulating by daybreak to a depth of nearly one foot, covering a layer of ice. Docket # 18 at 4. At approximately 6:30 a.m. on the morning of January 14th, a Lubrizol employee reporting to work found a substantial amount of snow-covered ice around the plant, including on the walkways and steps leading to Lubrizol's shipping and receiving department's entrance. Docket # 18 at 4; Docket # 18-2 at 2-3. Lubrizol's employees shoveled the snow at various times during the morning. Id. One of Lubrizol's employees testified that at approximately 9:00 a.m., the steps leading up to the shipping entrance door were "99 percent free of snow," although it was snowing heavily at that time. Docket # 18-2 at 9.

Marlatt had arrived in Wilmington in his truck on January 13, 2009, before the storm began. Docket # 18-3 at 5; Docket #18-4 at 4-5. He drove to Lubrizol's plant during the storm on the morning of January 14. Docket # 18-4 at 5. On an access road near the Lubrizol plant, Marlatt's truck was unable to reach the top of a hill on that road, and slid backwards down the hill. Id. Marlatt attempted to back his truck down the hill, but the truck became stuck in the snow. Id. He got out of his truck and started to walk up the hill to ask a nearby plow driver for

---

[2] Citations to the record throughout refer to the pagination of the Court's docketing system, rather than to any internal pagination of exhibits themselves.

help. Id. However, Marlatt slipped and fell, sliding "all the way down to my truck, I slid on my bottom." Id. Thereafter, with the plow's assistance, Marlatt drove his truck to Lubrizol's plant.

Marlatt parked thirty or forty feet from the shipping entrance, got out of his truck and walked across the parking lot toward the entrance. Id. The parking lot appeared to Marlatt to be covered with a "pretty thick snow" and it appeared that the lot had already been walked upon by prior pedestrians. Docket # 18-3 at 9.[3] Proceeding carefully in light of the snow and ice as well as his earlier fall, Marlatt approached the steps leading up to the shipping entrance door. Marlatt testified as follows:

> Well, put my hands on the rails, started walking up, I think it was around the third or fourth step, my foot slid out from underneath me and my whole weight went on both legs, I fell.

Docket # 18-3 at 10.

Marlatt asserts that he slipped and fell on "thick ice" on the steps that was covered by freshly fallen snow. Id. Lubrizol accepts the foregoing for purposes of summary judgment, although it contends that the stairs were free of snow and ice at the time of the accident based upon the testimony of employees and a post-accident photograph.

Lubrizol took a variety of other actions prior to Marlatt's fall to make the premises safe during the storm – other shoveling and snow plowing – which facts are not disputed by Marlatt.

The Parties dispute whether Marlatt has created a genuine issue of material fact regarding whether Lubrizol's employees applied ice-melt to the stairs prior to Marlatt's fall. Lubrizol

---

[3] I have revised this section of the statement of facts to reflect Marlatt's objection that his testimony concerning "thick ice" under the snow in the parking lot was speculation based upon his subsequent observation of the ice on the stairs. See Docket # 23 at 2. Marlatt nevertheless overstates the impact of this correction on the Court's analysis, which would have remained unchanged.

3

contends that Ice Melt was applied to the steps at least twice between 9:00 a.m. and 10:40 a.m. Marlatt disputes this assertion citing to his interrogatory answers in which he states that Lubrizol "failed to treat the stairs with ice-melting chemicals such as rock salt."

Marlatt brings suit against Lubrizol, alleging negligence. Docket # 1-2 at 9. Plaintiff Rosaria Marlatt alleges a loss of her husband's consortium resulting from Lubrizol's negligence. Id. at 10.

II. DISCUSSION

The familiar summary judgment standard applies and is incorporated herein from the prior Report and Recommendation.

The essential question presented is whether, drawing all reasonable inferences in the Plaintiffs' favor, no reasonable jury could conclude that Lubrizol breached its duty of reasonable care to maintain its property in a reasonably safe condition in view of all the circumstances. Papadopoulos, 457 Mass. at 378. Lubrizol cannot establish that, on the record before the Court. Given the undisputed evidence of a heavy New England snow storm dropping snow at the rate of 2-3 inches per hour at the time of Marlatt's fall on the steps leading to Lubrizol's building and Marlatt's testimony that a fresh covering of snow lay on the steps, over a layer of thick ice, a jury might reasonably conclude that Lubrizol owed a duty to Marlatt to respond to the storm with either greater or different efforts. For example, a jury might reasonably conclude Lubrizol, in these circumstances, had to clear or "de-ice" the steps more frequently, or direct visitors to enter via a different entrance. That a jury might reasonably conclude that Lubrizol's efforts sufficed to meets its legal duties does not provide a basis for summary judgment for Lubrizol. This type of reasonableness determination is quintessentially a jury function.

The Parties have also discussed a duty to warn, although the Plaintiffs have not advanced a separate Duty to Warn claim in the Complaint. In light of Papadopoulos, this case no longer presents a duty to warn issue for decision on summary judgment. That issue arose from the open and obvious doctrine which relieved a property owner both of the duty to warn and the duty to protect visitors from the open and obvious danger. Papadopoulos, 457 Mass. at 379. Because "[i]t is not reasonable for a property owner to leave snow or ice on a walkway where it is reasonable to expect that a hardy New England visitor would choose to risk crossing the now or ice rather than turn back or attempt an equally or more perilous walk around it . . . even if snow and ice were properly viewed as an open and obvious danger, this fact alone will not always relieve a property owner of the duty to use reasonable care in make the property reasonably safe for lawful visitors." Id. at 379-80. Thus, the issue is the reasonableness issue discussed supra.

For the foregoing reasons, on the present state of the law, I recommend that the Court DENY the Motion for Summary Judgment. However, there is a further issue to consider regarding the Plaintiffs' claims of negligence and loss of consortium. Indisputedly, Marlatt's fall occurred during a heavy snowstorm. In Papadopoulos the SJC specifically reserved ruling on the further legal issue presented by these facts.

> The reasonable care standard we adopt is sometimes referred to as the 'Connecticut rule, because of the Supreme Court of Connecticut's decision in Reardon v. Shimelman, 102 Conn. 383, 128 A. 705 (1925), rejecting the Massachusetts rule of natural accumulation and adopting instead a rule requiring a landlord to exercise reasonable care in preventing dangerous conditions in common areas due to accumulations of snow and ice. . . . The majority of States have followed the Connecticut rule rather than the Massachusetts rule of natural accumulation . . . In 1989, however, the Supreme Court of Connecticut added a new variant to the so-called Connecticut rule, providing that "in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and

5

snow from outside walks and steps." Kraus v. Newton, 211 Conn. 191, 197-198, 558 A.2d 240 (1989). Because the plaintiff here [in Papadopoulos] did not slip on snow or ice during a snow storm, we need not and do not decide today whether we agree with this interpretation of the duty of reasonable care. The decision whether to adopt such an interpretation should await our review of a case that presents such facts, where the issue may be fully briefed.

Papadopoulos, 457 Mass. at 384 n. 17 (citations omitted).

Neither party raised this issue with the Court in their supplemental memos. Nonetheless, the Court may wish to consider certifying this novel question of Massachusetts law to the Supreme Judicial Court. See Mass. S.J.C. Rule 1:03. "A federal court may certify a question even if no party has requested certification". Turner v. City of Boston, __ F.Supp.2d __, 2011 WL 379410 (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976); In re Hundley, 603 F.3d 95, 98 (1st Cir.2010); Robinson v. City of Omaha, Neb., 866 F.2d 1042, 1043 (8th Cir.1989)).

III. CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court DENY the Defendant's Motion for Summary Judgment (Docket # 17) and consider whether to certify to the Supreme Judicial Court of Massachusetts the question of whether to adopt the variation to the Connecticut rule allowing a property owner to fulfill its duty to use reasonable diligence to remove snow and ice from outside steps by awaiting the end of a storm and a reasonable time thereafter. See Papadopoulos, 457 Mass. at 384 n. 17.[4]

/s/ Leo T. Sorokin
LEO T. SOROKIN
United States Magistrate Judge

---

[4] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The Parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).